# IN THE COURT OF APPEALS OF IOWA

No. 21-1005
Filed March 30, 2022

**SANTENIO DELAMIKE ACKISS,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


The applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**


Kevin Hobbs, Johnston, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.


Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

Santenio Ackiss appeals from the denial of his application for postconviction relief (PCR) following his convictions of child endangerment and child endangerment causing bodily injury. Ackiss asserts that his trial counsel provided ineffective assistance, violating both his state and federal constitutional rights when counsel failed to object to out-of-court statements and allowed him to waive his right to a jury trial. Because he has not proved his counsel breached an essential duty by failing to make meritless evidentiary and constitutional objections, and he has not shown prejudice in having a bench trial where this evidence was heard by the judge, we affirm the PCR court's holding.

**Background Facts and Proceedings.**

Ackiss was arrested in November 2017 and charged with two counts of child endangerment causing bodily injury, a class "D" felony, and two counts of child endangerment, an aggravated misdemeanor. He waived his right to a speedy trial in a February 2018 hearing. In June, he filed a written waiver of his right to a jury trial.

In July, the district court engaged in a colloquy reinforcing the waiver decision. During that time, the court asked about Ackiss's educational history and his ability to understand and communicate with the court and his counsel, assured he was satisfied with his counsel and did not require additional consultation, and explored his medication use and whether that impacted his ability to make important decisions. The court asked Ackiss a series of questions about the waiver specifically:

Q. Now, Mr. Ackiss, you have the right to be tried by a jury of 12 people. These people would be summoned from all over Polk County, Iowa. There would be a large panel of them. And you, your attorney, and the county attorney would be able to question these prospective jurors under oath to determine who would be best-suited to be a juror in your trial. All sorts of questions could be asked of them: If they know anybody in the case; if they're biased or prejudiced against either the State or you; they are biased or prejudiced because of the charges, everything like that. The whole point is that then you, your attorney, and the county attorney would strike people off the list, and then we would have 12 people remaining, and those 12 people would be the jury. They would be the judges of the facts, and they would decide, after hearing all the evidence and receiving the law of the case from me, whether or not you're guilty or not guilty. The verdict in a jury trial must be unanimous. So any verdict for guilty, if they find you guilty, would have to be twelve to zero. Likewise, if they find you not guilty, it would have to be twelve to zero. Do you understand this right to a jury trial? A. Yes, Your Honor, I do.

. . . .

Q. Are you waiving your right to a jury trial today? A. Yes, Your Honor, I am.

Q. Has anyone made any threats or promises to get you to do this? A. No, Your Honor.

Q. Do you know, then, that instead of having your case heard and decided by 12 people, it's only going to be decided by one? A. Yes, Your Honor, I do.

Q. And knowing that, you still wish to go forward with this bench trial to the Court; is that right? A. Yes, Your Honor, I would like to.

Q. Have you discussed the pros and cons of this decision with your attorney? A. Yes, Your Honor.

Q. And you don't have to tell me what was said, but you did discuss it; right? A. Yes, Your Honor.

The court was satisfied Ackiss fully understood the waiver of his right to a jury, and trial then commenced. During trial the specific facts underpinning charges from a June 2017 incident were detailed. The Des Moines Police Department (DMPD) received a call from a woman about a domestic dispute. Officer Sidik Becirovic arrived on the scene and, at trial, testified to what he found. A woman—Ackiss's fiancée—and five children were by a minivan with a broken

window and glass littered inside on the seats and floor. Footage of the incident shows the woman was upset, and Officer Becirovic described her as "worked up," crying, and worried. The woman was pregnant with Ackiss's child, and three of the children in the car were also biologically his. She told Officer Becirovic that, while she was driving, Ackiss reached across from the passenger seat and pulled the keys out of the ignition, stopping the minivan in an oncoming traffic lane. After Ackiss got out of the car, he "busted" the rear passenger-side window on the sliding door before eventually fleeing. The children appeared upset, and two were injured by the glass. The State entered into evidence a video from Officer Becirovic's body cam that allowed the court to see and hear Ackiss's fiancée's commentary about the situation. Ackiss's counsel made one hearsay objection during Officer Becirovic's testimony, which the court overruled.

Detective Jennifer Westlake conducted further investigation and also testified at trial. For the court's benefit, she reviewed the footage and photographs from the scene. And when Westlake spoke with Ackiss's fiancée, the fiancée's account of the events matched what she told officers before.

At the trial, Ackiss's fiancée initially failed to appear despite a subpoena. The case was continued, and she participated in the second part of the trial. But she told a different version of events. She testified that she stopped the minivan, not Ackiss. She stated Ackiss did not break the window, though she did not know how it shattered, and that she lied about it to Officer Becirovic and Detective Westlake.

The court ultimately found Ackiss guilty on one count each of child endangerment causing bodily injury and child endangerment.[1]  Ackiss appealed, and a panel of this court affirmed his convictions but remanded for a change in his sentenced restitution.  *See State v. Ackiss*, No. 18-1787, 2019 WL 4678184, at *2–3 (Iowa Ct. App. Sept. 25, 2019).  Ackiss applied for PCR, alleging seven claims of ineffective assistance against his trial counsel.  All seven claims focus on counsel allowing testimony about his fiancée's original statements to police and Ackiss's waiver of his right to a jury trial.

Before the PCR hearing, Ackiss took a deposition of his trial counsel, which was submitted as evidence to the PCR court.  He also called that counsel as a witness at the hearing.  The attorney testified in his deposition, and reiterated at trial, that he did not make hearsay objections to the testimony about Ackiss's fiancée's statements because he thought they would be futile; he bypassed a constitutional Confrontation Clause objection for the same reason.  The attorney wanted to keep the evidence out but saw no realistic path to do so.  He also stated that, until Ackiss's fiancée testified, he was unsure which story she would tell at trial—he called her a "wild card."  He was unaware if the prosecution knew either and did not believe the State put her on the stand only to impeach her.  Finally, he took no depositions before the trial because he did not want to tip his hand to the State and because much of Ackiss's fiancée's account of the event was captured by body camera.

---

[1] The other two counts, concerning the children who are not biologically Ackiss's, were dismissed as the judge did not believe there was sufficient evidence that the children were in Ackiss's custody or control.  *See* Iowa Code § 726.6(1) (2017).

All of Ackiss's PCR challenges were denied, and the PCR court dismissed his application. Ackiss now appeals.

**Discussion.**

We typically review an appeal from a PCR action for correction of errors at law; but, when the appeal raises constitutional issues, such as ineffective assistance of trial counsel, our review is de novo. *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). To prove counsel was ineffective, the applicant must show, by a preponderance of the evidence, both "that (1) trial counsel failed to perform an essential duty and (2) this failure resulted in prejudice." *Linn v. State*, 929 N.W.2d 717, 730 (Iowa 2019). In evaluating the first prong, we compare counsel's performance to the "reasonably competent practitioner." *Id.* at 731. The applicant faces a presumption that counsel's actions were competent, *Nguyen v. State*, 878 N.W.2d 744, 752 (Iowa 2016), and counsel has no duty to raise an issue without merit. *Millam v. State*, 745 N.W.2d 719, 721–22 (Iowa 2008). For the second prong, the applicant must then establish that the errors were serious enough to render the trial unfair. *Linn*, 929 N.W.2d at 731. This requires them to show a reasonable probability that the outcome would have been different if counsel had not breached their duty. *Id.* "The likelihood of a different result need not be more probable than not, but it must be substantial, not just conceivable." *King v. State*, 797 N.W.2d 565, 572 (Iowa 2011). "Failure to prove either prong is fatal to an ineffective-assistance-of-counsel claim." *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 868 (Iowa 2019).

In his appeal, Ackiss asserts that his trial counsel was ineffective for (1) not adequately challenging his fiancée's out-of-court statements and (2) poorly guiding Ackiss through waiving his right to a jury trial. We take each up in turn.

**1. Ineffective Assistance of Counsel: The Fiancée's Statements.**

Ackiss's first claim is that his counsel breached a duty by failing to object to his fiancée's out-of-court statements captured on the body camera footage. He asserts there were three potential ways to keep the evidence out—objections to hearsay, a *Turecek* objection, or objecting to a violation of the Confrontation Clause.

We outline the reasons none of these assertions are meritorious below.

*A. Hearsay Objection.*

Hearsay is a statement "[t]he declarant does not make while testifying at the current trial or hearing" and which "[a] party offers into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). But the rules provide an exception, known as the "excited utterance" exception, for statements that would otherwise be hearsay if it is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Iowa R. Evid. 5.803(2). We consider five factors to determine whether something is an excited utterance or not:

> (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999). Excited utterances are considered more reliable than typical hearsay because "statements made under

the stress of excitement are less likely to involve deception than if made upon reflection or deliberation." *State v. Harper*, 770 N.W.2d 316, 319 (Iowa 2009).

Ackiss's fiancée's statement to the police, captured on the body camera, fits all five criteria. The statement was made within minutes of the event, just as the police officers arrived on the scene. *See id.* (collecting cases with allowable time limits up to two days). She began her account of the event without prompting by the officers. *Cf. State v. Dudley*, 856 N.W.2d 668, 680 (Iowa 2014) (saying a statement was not an excited utterance when made only after multiple promptings).[2] Considering her condition, she was visibly upset when the officer arrived. The event she described was jarring—she not only saw her children injured by her fiancée's actions, but she was left without her car keys while her car sat in the middle of the road. And the event she was speaking about concerned the substance of the trial. *See Atwood*, 602 N.W.2d at 783 (stating, in discussing the fifth prong, that "[t]he subject matter of the statement was clearly probative"). In short, she was still under the stress of the event while telling officers about it, so the statements qualify as excited utterances not excluded by our hearsay rules.

As a hearsay objection would not have been meritorious, counsel did not breach an essential duty by not objecting. *See Millam*, 745 N.W.2d at 721–22.

*B.* Turecek *Objection.*

Iowa Rule of Evidence 5.607 allows "[a]ny party, including the party that called the witness, [to] attack the witness's credibility." *See also State v. Trost*, 244 N.W.2d 556, 560 (Iowa 1976) ("We reject the rule that a party may not impeach

---

[2] We note, though, that the fact that a statement was prompted by a question does not automatically disqualify it as an excited utterance. *Harper*, 770 N.W.2d at 320.

his own witness. . . . Henceforth, in all trials in this state, the credibility of a witness may be attacked by any party, including the party calling him."). But *State v. Turecek*, 456 N.W.2d 219, 225 (Iowa 1990), prevents the State from "plac[ing] a witness on the stand who is expected to give unfavorable testimony and then, in the guise of impeachment, offer evidence which is otherwise inadmissible." Ackiss argues that this is exactly what the State did in his case when they called his fiancée to the stand, and so his counsel should have made a *Turecek* objection. He also believes his counsel breached an essential duty by not deposing his fiancée to determine whether a *Turecek* objection was warranted.

Building on Ackiss's argument, a *Turecek* objection would have not succeeded as the evidence was not otherwise inadmissible. The evidence used to impeach the witness were the statements she made to police, which we have already determined were excited utterances not excluded by our hearsay rules; *Turecek*, then, would not here hinder the State. *See State v. Russell*, 893 N.W.2d 307, 316 (Iowa 2017) ("The *Turecek* rule is a shield designed to prevent the introduction of otherwise inadmissible evidence, but it cannot be used to prevent the State from using admissible evidence to impeach a witness. Prior statements of a witness that are admissible as substantive evidence may be freely employed to impeach a witness on direct examination." (internal citations omitted)).

This still leaves Ackiss's related claim that his counsel was ineffective for failing to depose Ackiss's fiancée. But as there was no *Turecek* challenge to be made, he has failed to show the outcome would have been different had she been deposed, and so proves no prejudice. *See State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020) ("The crux of the prejudice component rests on whether the defendant

has shown 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984))).

Ackiss, therefore, has not proved his counsel was ineffective for failing to depose his fiancée or to levy a *Turecek* objection to her testimony and subsequent impeachment.

*C. Confrontation Clause Objection.*

The Confrontation Clause of the Sixth Amendment of the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also State v. Shipley*, 757 N.W.2d 228, 234 (Iowa 2008) (interpreting identically the federal provision and the corresponding provision of the Iowa Constitution). Ackiss is right to note that "[i]f a hearsay statement made by a declarant who does not appear at trial is testimonial, evidence of that statement is not admissible under the Confrontation Clause unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity for cross-examination." *State v. Schaer*, 757 N.W.2d 630, 635 (Iowa 2008) (citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). As a preliminary matter, we question whether the statements at issue are testimonial. *See State v. Richards*, No. 18-0522, 2019 WL 1057886, at *5 (Iowa Ct. App. Mar. 6, 2019) (finding statements admitted under the excited-utterance exception to the hearsay rule to be non-testimonial when made during an ongoing emergency). We need not resolve that question, however, because even if we assume the statements were testimonial, they did not violate the Confrontation Clause. As the PCR court correctly found, the concern is ameliorated if the

declarant, in this case Ackiss's fiancée, does ultimately testify at trial and is subject to cross-examination. *See State v. Tompkins*, 859 N.W.2d 631, 638 (Iowa 2015) ("Notwithstanding this obligation, the general rule is that 'when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [their] prior testimonial statements.'" (quoting *Crawford*, 541 U.S. at 59 n.9)). At his criminal trial, Ackiss's fiancée did ultimately present herself as a witness, and Ackiss got a chance to—and did—cross examine her. So we find no violation of Ackiss's right to confront the witnesses against him.

**2. Ineffective Assistance: Jury Trial.**

Although Ackiss voluntarily and knowingly waived his right to a jury trial, he fashions an argument his counsel was "ineffective for not properly guiding him." Ackiss's second argument builds on his earlier hearsay argument. Specifically, he argues that, assuming the aforementioned hearsay statements were objectionable, the judge would be influenced by them rather than the judge filtering the evidence before it could taint the jury. His trial counsel reasoned:

> My understanding has always been in bench trials, that the judge's own—to put this, you know, unsophisticatedly, the judge's own brain is the filter of what sort of things are objectionable and not, admissible or not. So, I mean, if that comment—if any comment like that was made to the bench, I would assume they would disregard that. To a jury, certainly that's a different can of worms.

Disagreeing with that approach, Ackiss believes his attorney provided ineffective assistance of counsel surrounding the waiver of his right to a jury trial. Even with this strategy call by counsel, Ackiss fails to show he was prejudiced by that decision. Put more simply, choosing a jury trial over the bench trial likely would not have changed the result given the facts as presented. As Ackiss has provided

no other argument that he was prejudiced by having a bench trial rather than a jury trial, his argument holds no water.  *See Kuhse*, 937 N.W.2d at 628.

**Conclusion.**

As Ackiss has not proved that his trial counsel breached a duty by failing to make a meritless hearsay, *Turecek*, or Confrontation Clause objection, and he has not shown prejudice in having a bench trial where this evidence was heard by the court, we affirm the PCR court's denial of his application.

**AFFIRMED.**